[Cite as *State v. Faulkner*, 2011-Ohio-4573.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. W. Scott Gwin, P.J. |
| Plaintiff-Appellee | : | Hon. John W. Wise, J. |
| | : | Hon. Patricia A. Delaney, J. |
| -vs- | : | |
| | : | Case No. 2011-CA-00019 |
| TERRA K. FAULKNER | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:       Appeal from the Alliance Municipal Court
                               Case No. 2011-CRB-01134


JUDGMENT:                      AFFIRMED

DATE OF JUDGMENT ENTRY:        September 6, 2011


APPEARANCES:

For Plaintiff-Appellee:                For Defendant-Appellant:

JENNIFER ARNOLD 0070848                JACOB T. WILL 0086558
Alliance Prosecutor's Office           116 Cleveland Ave., N.W., Ste. 808
470 E. Market St.                      Canton, Ohio 44702
Alliance, Ohio 44601

*Delaney, J.*

{¶1}    Defendant-Appellant, Terra Faulkner, appeals from the judgment of the Alliance Municipal Court, convicting her of three counts of criminal mischief, misdemeanors of the third degree, in violation of R.C. 2909.07.  The State of Ohio is Plaintiff-Appellee.

{¶2}    On August 21, 2010, at approximately 2:30 a.m., Dawn Shutler received a phone call from a person whom she recognized as being Appellant.  Shutler stated that she had spoken to Appellant many times, that Appellant has a distinctive voice, and that she was positive that the person on the phone was Appellant.

{¶3}    Shutler stated that she and Appellant did not get along and that they had not been friends for a long time.  During the phone call at 2:30 a.m. on the twenty-first, Shutler stated that Appellant told her that she had had Shutler's brother's car "detailed" for him that night.  At that time, Appellant lived next door to Shutler's brother on Summit Street in Alliance.  Shutler asked Appellant to clarify, and Appellant stated "I detailed his and the neighbors."  Appellant then told Shutler to go over and take a look at the cars. Appellant then called Shutler back and said something about a "pool party."

{¶4}    Shutler proceeded to her brother's (Robby), house, where she heard water pouring out of something.  She went into Robby's neighbors' yard, Brad and Shellie Sampson, and started sliding because there was water gushing everywhere.  It was later determined that someone had cut holes in their above-ground pool, causing water to drain out of the pool.

{¶5} Shutler immediately called the police. When the police arrived, Shutler's phone rang again and it was Appellant. Shutler handed the phone to the police, who spoke with Appellant briefly.

{¶6} When the officer shined his flashlight on Robby's van, they saw that someone had scratched the side of the car in multiple places. Shutler then woke her brother up to inform him of the damage. Robby stated that the damage had not been there the previous day.

{¶7} Shellie Sampson was also informed of the vandalism and she stated that prior to August 21, her pool was full and had no cuts in it. Her husband's black Chevy Avalanche had also been scratched up that evening, and she stated that the scratches were not there the previous day. Sampson took photographs of the damage to the vehicles and the pool, which were introduced at trial.

{¶8} Earlier, on August 3, 2010, Sampson was sitting on Robby Shutler's front porch, when Appellant began calling them repeatedly. At one point, they put the phone on speaker and recorded a conversation between themselves and Appellant. Sampson stated that she was able to procure another cell phone, a BlackBerry, which was used to record the call and that she turned the recording over to the Alliance police department. In the recording, Appellant was cussing at them and also made a statement about Sampson's "nice truck".

{¶9} Sampson listened to the recording again at trial and stated that it was the same as it had been the day that it was made. She also stated that when she retrieved the phone from the owner, it had been locked in a safe.

{¶10} Sampson also informed the police that after the incident, Appellant would make statements about how it was hot outside, and how it would be a nice day to go swimming and laugh about the damage to the pool.

{¶11} Officer Aaron Perkins of the Alliance Police Department testified that he responded to Dawn Shutler's call at approximately 2:30 a.m. on August 21, 2010, and that she showed him the damage to her brother's car and to the pool. While Perkins was speaking with Shutler, he stated that Shutler's phone rang and that it was Appellant. He took the phone from Shutler and spoke to Appellant, and stated that he recognized her voice because she has a distinctive voice.

{¶12} Perkins told Appellant that he was outside her house and that he wanted to speak with her and she hung up the phone. He stated that he could see people moving around inside Appellant's residence. He approached the residence and Appellant came out and he spoke further to her.

{¶13} A complaint was filed against Appellant on September 3, 2010, for three counts of criminal mischief, misdemeanors of the third degree, in violation of R.C. 2909.07.

{¶14} Appellant exercised her right to a jury trial on December 30, 2010, and the jury found her guilty of each count. The trial court sentenced Appellant to thirty days in jail on each count, and suspended fifteen days on each count. The court also ordered Appellant to pay $250.00 restitution to Robby Shutler for the deductible on his car, $250.00 to Brad Sampson for the deductible on his truck, and $499.00 to Shellie Sampson for the damage to the pool.

{¶15} It is from this judgment that Appellant now appeals and raises two Assignments of Error:

{¶16} "I. APPELLANT'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE.

{¶17} "II. THE TRIAL COURT ERRED IN PERMITTING THE STATE TO PRESENT THE PHYSICAL EVIDENCE OF A RECORDING OF A PHONE CALL AS THE STATE FAILED TO ESTABLISH CHAIN OF CUSTODY."

I.

{¶18} In her first assignment of error, Appellant claims that the evidence was insufficient to support a finding of guilty and that her convictions were against the manifest weight of the evidence. We disagree.

{¶19} When reviewing a claim of sufficiency of the evidence, an appellate court's role is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492. Contrary to a manifest weight argument, a sufficiency analysis raises a question of law and does not allow the court to weigh the evidence. *State v. Martin* (1983), 20 Ohio App.3d 172, 175. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, "any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Thompkins,* 78 Ohio St.3d 380, 386, 1997-Ohio-52, 678 N.E.2d 541.

{¶20} Conversely, when analyzing a manifest weight claim, this Court sits as a "thirteenth juror" and in reviewing the entire record, "weighs the evidence and all

reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed." *State v. Thompkins* (1997), 78 Ohio St.3d 380, 387, 678 N.E.2d 541, 548, quoting *State v. Martin* (1983), 20 Ohio App.3d 172, 175.

{¶21} In order to convict Appellant of criminal mischief, the State had to prove that Appellant, without privilege to do so, knowingly moved, defaced, damaged, destroyed, or otherwise improperly tampered with the property of another. R.C. 2909.07(A)(1). Specifically, the State had to prove that Appellant defaced, damaged, or tampered with Robby Shutler's car, with Brad Sampson's truck, and with Brad and Shellie Sampson's pool.

{¶22} When viewing the evidence in the light most favorable to the prosecution, we find that sufficient evidence existed to convict Appellant of these three counts of criminal mischief.

{¶23} Dawn Shutler testified that when she received the call at 2:30 a.m. on August 21, 2010, she immediately recognized the caller as being Appellant because she had spoken to her many times in the past. Appellant told Shutler that she had just "detailed" Shutler's brother's car and the neighbors' car. She then called Shutler back and mentioned a pool party.

{¶24} When Shutler arrived at her brother's residence, the driver's side of his car had been scratched up and there was water in the Sampson's backyard from where someone had cut gashes into the pool. Sampson's car had also been keyed, which they realized the next morning.

{¶25} When the police arrived at Robby Shutler's house that night, Appellant again called Dawn Shutler and Shutler handed the phone to Officer Perkins, who recognized Appellant's voice. He then went to Appellant's residence and briefly spoke to her, confirming that the person on the phone was indeed Appellant.

{¶26} After the incident, Appellant would sit on her porch and make comments towards Shellie Sampson about how it was hot outside and that it would be a nice day to swim in a pool.

{¶27} Based on the evidence presented, we find sufficient evidence to convict Appellant of the crimes with which she was charged. Moreover, Appellant has presented no persuasive argument that the jury lost its way in convicting Appellant. Accordingly, Appellant's convictions were not against the manifest weight of the evidence.

{¶28} Appellant's first assignment of error is overruled.

II.

{¶29} In her second assignment of error, Appellant argues that the trial court erred by allowing the State to present evidence of the phone recording of August 3, 2010, because the State failed to establish chain of custody.

{¶30} Trial courts are granted broad discretion with respect to the admission or exclusion of evidence at trial. *State v. Sage* (1987), 31 Ohio St.3d 173, 180, 510 N.E.2d 343, 348. Thus, an appellate court will not reverse a trial court's ruling absent an abuse of discretion. *State v. Myers*, 97 Ohio St.3d 335, 348, 2002-Ohio-6658, ¶75. "The term 'abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore*

(1983), 5 Ohio St.3d 217, 219. Absent an abuse of discretion resulting in material prejudice to the defendant, a reviewing court should be reluctant to interfere with a trial court's decision in this regard. *State v. Hymore* (1967), 9 Ohio St.2d 122, 224 N.E.2d 126.

{¶31} The State bears the burden of establishing a proper chain of custody; however, that duty is not absolute. *State v. Moore* (1973), 47 Ohio App.2d 181, 353 N.E.2d 866. The State need only establish that it is reasonably certain that substitution, alteration or tampering did not occur. Id. Moreover, breaks in the chain of custody go not to the admissibility of evidence, but to the weight afforded it. *Columbus v. Marks* (1963), 118 Ohio App. 359, 194 N.E.2d 791; *State v. Fleming* (May 10, 1983), 10th Dist. No. 82AP-813, 1983 WL 3503.

{¶32} The phone recording was created on August 3, 2010. Robby Shutler and Shellie Sampson were present, along with others, when the recording was made. The call was recorded onto a pink BlackBerry with a cracked screen. Sampson testified that she retrieved the cell phone from the owner several weeks after the conversation occurred, that the owner had retrieved it from a safe, and that Sampson then took it to the police department to be used as evidence.

{¶33} The recording was played at trial and Sampson testified that it was the exact same conversation that took place on August 3, 2010. She also identified her own voice and Appellant's and Robby's in the recording. She stated that she was present for the whole conversation when the recording was made and stated that it had not been altered prior to trial.

{¶34} Accordingly, any question as to chain of custody and whether the recording was accurate was a matter for the jury to determine and weigh in light of all the evidence.

{¶35} The trial court did not err in allowing the admission of the recording into evidence.

{¶36} Appellant's second assignment of error is overruled.

{¶37} The judgment of the Alliance Municipal Court is affirmed.

By: Delaney, J.

Gwin, P.J. and

Wise, J. concur.

 

HON. PATRICIA A. DELANEY

 

HON. W. SCOTT GWIN

 

HON. JOHN W. WISE

[Cite as *State v. Faulkner*, 2011-Ohio-4573.]

IN THE COURT OF APPEALS FOR STARK COUNTY, OHIO

FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | |
| | : | |
| | : | |
| -vs- | : | JUDGMENT ENTRY |
| | : | |
| TERRA FAULKNER | : | |
| | : | |
| Defendant-Appellant | : | Case No. 2011-CA-00019 |
| | : | |

For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Alliance Municipal Court is affirmed. Costs assessed to Appellant.

_____
HON. PATRICIA A. DELANEY

_____
HON. W. SCOTT GWIN

_____
HON. JOHN W. WISE